# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Brandon Lancaster, Dallas Lancaster, and      Civil No. 11-619 (DWF/FLN)
Jacob Lancaster,

         Plaintiffs,

v.                                 **MEMORANDUM**
                                        **OPINION AND ORDER**

Northern States Power Company, a
Minnesota corporation, d/b/a Xcel Energy,

         Defendant.

_____

Daniel S. Schleck, Esq., and Rick L. Petry, Esq., Mansfield Tanick & Cohen, PA, counsel
for Plaintiffs.

Delmar R. Ehrich, Esq., and Christopher H. Dolan, Esq., Faegre & Benson LLP, counsel
for Defendant.

_____

## INTRODUCTION

     This matter is before the Court on Defendant Northern States Power Company's

("NSP")[1] Motion to Dismiss (Doc. No. 7).  At the hearing, the Court granted leave for

Plaintiffs to file a Second Amended Complaint (Doc. No. 16).  For the reasons set forth

below, the Court grants Defendant's motion to dismiss.

---

[1]      Northern States Power Company ("NSP"), a Minnesota corporation, does business
as Xcel Energy ("Xcel").  For the purposes of this order, the Court will refer to this entity
as Defendant.

## BACKGROUND

Plaintiffs make the following allegations relative to this motion.  Axicor Trihus
was an employee of Xcel Energy ("Xcel") for a significant number of years as an
electrical engineer.  (Doc. No. 16, Second Am. Compl. ¶ 6.)  NSP is a public utility
corporation wholly owned by Xcel Energy Inc.  (Doc. No. 6.)  Plaintiffs allege that
Mr. Trihus, as an electrical engineer, had access to hazardous substances under the
dominion and control of NSP, including electrical capacitors containing Poly Chlorinated
Biphenyls ("PCBs").  (Second Am. Compl. ¶¶ 6, 9.)  Prior to 2010, Mr. Trihus retired as
an employee of Defendant.  (*Id.* ¶ 6.)  At some unknown time, Mr. Trihus transported and
stored or disposed of the PCB-containing capacitors on his property located at an address
in Roseville, Minnesota ("Roseville property").  (*Id.* ¶¶ 8, 16.)  Mr. Trihus and his wife
Lois Trihus owned the Roseville property together until Mr. Trihus died, prior to
January 4, 2010.  (*Id.* ¶ 8.)  Upon Mr. Trihus's death, the interest in the property passed
in whole to Mrs. Trihus.  (*Id.*)  On December 3, 2009, Mrs. Trihus contacted Defendant
and "request[ed] that it remove certain electrical equipment, including without limitation
six capacitors that were either being stored on the Property or that had been disposed of
thereon."  (*Id.* ¶ 19.)  In late 2009 or early 2010, Defendant removed the capacitors from
the Roseville property and took soil samples and pictures.  (*Id.* ¶ 20.)

Following the removal of the capacitors, Defendant wrote to the Lancasters by
letter dated February 25, 2010.  (*Id.* ¶ 22.)  In this letter, Defendant indicated that it had
removed the capacitors, and when doing so had observed a "tar like substance . . . leaking

from one of [them]."  (*Id.*)  Defendant noted that after testing a sample of this tarry

substance, it determined that the substance contained PCBs, which are "Hazardous

Substance[s]" as defined in 42 U.S.C. § 9601(14).  (*Id.* ¶¶ 22–25.)  Subsequent testing

identified the presence of PCBs at other locations on the Roseville property.  (*Id.* ¶ 25.)

On December 4, 2009, Defendant called a Minnesota Duty Officer with the

Minnesota Department of Public Safety – Bureau of Criminal Apprehension and reported

that one of Defendant's former employees (Mr. Trihus) had removed capacitors from the

workplace and stored them at the Roseville property.  (*Id.* ¶ 30.)  The Minnesota Duty

Officer's written report ("Report") contains the following narrative:  "[C]aller reporting a

former employee removed capacitors from the workplace [without permission] and stored

them at his residence.  He has since passed away and his wife is trying to clean up area.

One capacitor was found leaking to it's [sic] own surface."  (Doc. No. 20, Ex. C at 1.)

The Report lists Xcel Energy as the "Responsible Party/Property Owner."[2]

On or about December 12, 2009, Plaintiffs Brandon and Dallas Lancaster entered

into a purchase agreement for the Roseville property and closed the purchase on

January 4, 2010.  (*Id.* ¶¶ 17, 18.)  Plaintiffs took possession of the property shortly

thereafter.  (*Id.* ¶ 18.)  As part of the property sale transaction, Mrs. Trihus was required

to complete a Seller's Property Disclosure Statement as required by Minn. Stat.

§§ 513.52–513.60.  Mrs. Trihus was required to disclose "all material facts of which the

---

[2]       Neither the Report nor the complaint specifies what qualifies an entity as a
"responsible party" in such a report from the Department of Public Safety's Bureau of
Criminal Apprehension.

seller is aware that could adversely and significantly affect . . . an ordinary buyer's use and enjoyment of the property." *See* Minn. Stat. § 513.55, subd. 1. Mrs. Trihus completed the disclosure statement without mentioning the capacitors. (Second Am. Compl. ¶ 17.)

Plaintiffs' complaint alleges that the presence of the PCB-containing capacitors on the Roseville property has caused the property to lose substantially all its value, and has caused Plaintiffs to suffer severe and substantial economic, physical, and emotional damages. (*Id.* ¶ 33.)

Plaintiffs allege the following counts against Defendant: (1) violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*; (2) violations of the Minnesota Environmental Response and Liability Act ("MERLA"), Minn. Stat. § 115B.02, *et seq.*; (3) a claim for declaratory relief based on violations of CERCLA, MERLA, and the Minnesota Environmental Rights Act ("MERA"); (4) equitable indemnification; (5) trespass; (6) nuisance; (7) negligence; and (8) negligent hiring, training, retention, and supervision. (Second Am. Compl. ¶¶ 35–88.)

Defendant now moves for dismissal of this action on the basis that Plaintiffs have failed to plead sufficient facts to sustain a cause of action under any of the above claims.

## DISCUSSION

### I.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.[3]

---

[3]      It should be noted that Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Doc. No. 12) omits a discussion of the *Iqbal/Twombly* "plausibility" pleading standard outlined above, and instead references *Conley v. Gibson*, 355 U.S. 41 (1957), and its "no set of facts" standard, which has since been overruled.  In
(Footnote Continued on Next Page)

II.      **Defendant's Motion to Dismiss**

Defendant argues that Plaintiffs' claims fail because:  (1) Plaintiffs have failed to plead facts sufficient to permit an inference that Defendant was a "responsible party" under CERCLA and MERLA; (2) Plaintiffs assert no claim based on MERA; (3) Plaintiffs have not shown that Minnesota law would permit indemnification; (4) Defendant made no unlawful entry to support a claim for trespass; (5) Plaintiffs have not alleged facts to support a nuisance claim; (6) Defendant did not owe Plaintiffs any duty which it breached that would support a negligence claim; (7) Minnesota does not recognize a cause of action for negligent training; (8) Plaintiffs have not adequately alleged Mr. Trihus caused them personal injury; (9) Plaintiffs do not allege Mr. Trihus committed an intentional tort; and because (10) Plaintiffs have not alleged facts suggesting that Mr. Trihus's conduct regarding the capacitors was within the scope of his employment.  (Doc. No. 10 at 1–3.)  Each of Plaintiffs' claims rests on the premise that Defendant is ultimately the responsible party for the presence of capacitors containing PCBs on the property previously owned by Mr. Trihus and later purchased by Plaintiffs. Because the Court finds that Plaintiffs have failed to plead sufficient facts to support this premise, Plaintiffs' complaint must be dismissed in its entirety.

A.      **Sufficiency of the Pleadings:  CERCLA, MERLA, and MERA**

_____

(Footnote Continued From Previous Page)

order to survive Defendant's motion to dismiss, Plaintiffs must meet the *Twombly* standard.

As a preliminary matter, the Court finds that Plaintiffs' claims fail to meet the basic pleading requirements of the Federal Rules of Civil Procedure.  Under Rule 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While the Rule 8 pleading standard does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal,* 129 S. Ct. at 1949.  A complaint will not suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly,* 550 U.S. at 557).

Each of Plaintiffs' eight claims rests on the assertion that Defendant was responsible for the capacitors that Mr. Trihus transported to his property.  While Plaintiffs have alleged that the capacitors were in Defendant's possession and under its control before Mr. Trihus removed them, they do not set forth any facts indicating how Mr. Trihus came into possession of the capacitors, nor do they allege any facts supporting their bare assertions that Defendant had any knowledge or involvement in the capacitors' transportation to the Roseville property.[4]  Moreover, Plaintiffs have not alleged facts to support their claims that Defendant owed a duty to Plaintiffs, or that Mr. Trihus's transportation or storage of the capacitors was in the scope of his employment with

---

[4]      Plaintiffs allege in their Second Amended Complaint (Doc. No. 16) that "Xcel had knowledge of the disposal and removal of the [c]apacitors from the normal stream of commerce" and that "Xcel had knowledge that Mr. Trihus, acting as Xcel's agent, disposed of and removed the [c]apacitors from the normal stream of commerce." (Second Am. Compl. ¶¶ 14, 15.)  However, Plaintiffs offer no facts to support an allegation of knowledge on Defendant's part, and their claim of an agency relationship is similarly unsupported.

Defendant.  Plaintiffs have failed to plead sufficient facts to provide a link between

Mr. Trihus's conduct and Defendant's alleged liability.  Plaintiffs' claims of Defendant's

involvement are merely conclusory statements or inferences of responsibility based upon

an alleged agency relationship.  Also absent from the Second Amended Complaint are

sufficient allegations to support the causes of action of trespass, nuisance, negligence,

and negligent hiring, retention, and training that is sufficient to satisfy the requirements

of *Twombly*, each of which will be discussed below.  As such, Plaintiffs' claims fail in

this regard.

### 1.     CERCLA

Plaintiffs' claim against Defendant under CERCLA fails to plead that Defendant is

a "covered person," which is required to recover damages under 42 U.S.C. § 9607(a).

Under CERCLA, a "covered person" from whom damages are recoverable must fall

under one of the four following categories:

(1)     the owner and operator of a vessel or a facility,

(2)     any person who at the time of disposal of any hazardous substance
owned or operated any facility at which such hazardous substances were
disposed of,

(3)     any person who by contract, agreement, or otherwise arranged for
disposal or treatment, or arranged with a transporter for transport for
disposal or treatment, of hazardous substances owned or possessed by such
person, by any other party or entity, at any facility or incineration vessel
owned or operated by another party or entity and containing such hazardous
substances, and

(4)     any person who accepts or accepted any hazardous substances for
transport to disposal or treatment facilities, incineration vessels or sites
selected by such person, from which there is a release, or a threatened

release which causes the incurrence of response costs, of a hazardous substance[.]

42 U.S.C. § 9607(a).  Plaintiffs' complaint does not allege facts indicating that Defendant owned or operated the "facility" at which the materials were disposed, (in this case, the Roseville property), that Defendant arranged for disposal of the hazardous substances on the Roseville property, or that Defendant accepted the substances for transport and disposal.[5]  Mere ownership or possession of a hazardous substance is not alone enough to qualify as a covered person under CERCLA or MERLA.  *See* 42 U.S.C. § 9607(a); Minn. Stat. § 115B.03, subd. 1.  Plaintiffs have also not alleged any facts furthering their allegation that Defendant knew of Mr. Trihus's possession, transport, or disposal of the capacitors.  Therefore, Plaintiffs' claim under CERCLA fails to state a claim upon which relief can be granted.  Count I of the Second Amended Complaint is therefore properly dismissed.

### 2.    MERLA Claim

Plaintiffs' claim against Defendant under MERLA, Minn. Stat. § 115B.04–05, also fails to plead that Defendant is a "covered person."  As with CERCLA, Defendant must be a person who:

(1)    owned or operated the facility;

_____

[5]    Plaintiffs' Second Amended Complaint alleges that "Xcel is a person who, by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for disposal or treatment, of hazardous substances owned or possessed by such person, by another party or entity, at any facility or incineration vessel owned or operated by another party or entity and is liable pursuant to 42 U.S.C. § 9607(a)(2)." (Second Am. Compl. ¶ 39.)

(i)    when the hazardous substance, or pollutant or contaminant, was placed or came to be located in or on the facility;

(ii)   when the hazardous substance, or pollutant or contaminant, was located in or on the facility but before the release; or

(iii)  during the time of the release or threatened release;

(2)    owned or possessed the hazardous substance, or pollutant or contaminant, and arranged, by contract, agreement, or otherwise, for the disposal, treatment or transport for disposal or treatment of the hazardous substance, or pollutant or contaminant, or

(3)    knew or reasonably should have known that waste the person accepted for transport to a disposal or treatment facility contained a hazardous substance, or pollutant or contaminant, and either selected the facility to which it was transported or disposed of it in a manner contrary to law.

Minn. Stat. § 115B.03, subd. 1.  As with Plaintiffs' CERCLA claim, Plaintiffs have alleged no facts showing that Defendant owns or owned the Roseville property, took any affirmative steps to intentionally arrange for the disposal at the site, or participated in transporting the capacitors.

With respect to both Plaintiffs' MERLA and CERCLA claims, Plaintiffs fail to allege facts sufficient to plead that Defendant was an "arranger."  For arranger liability to attach, a party must have taken "intentional steps to dispose of a hazardous substance." *Burlington N. & Santa Fe Ry. v. United States*, 556 U.S. 599 (2009) ("under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance").  Plaintiffs do not allege that Defendant took intentional steps to dispose of the capacitors on the property.  As a result, Plaintiffs' MERLA claim fails as a matter of law, and is properly dismissed.

### 3.  MERA Claim

MERA provides that any person residing within the state may file a civil action in state district court for declaratory or equitable relief against any person for the protection of air, water, land, or other natural resources in Minnesota from "pollution, impairment, or destruction."  Minn. Stat. § 116B.03.  Plaintiffs allege they are entitled to a declaratory judgment that Defendant has violated MERA by "*inter alia*, failing to remediate the hazardous substances at the Property."  (Second Am. Compl. ¶ 61.)

Plaintiffs, however, have not pleaded any facts supporting their allegation that Defendant knew of the transport and disposal of the capacitors at the time of their removal by Mr. Trihus.  When Mrs. Trihus became aware of the PCB-containing capacitors, she reported their presence to Defendant, who came to the property, tested the soil, and removed the capacitors.  Defendant also reported the capacitors, as well as the leaks, to the Minnesota Department of Public Safety – Bureau of Criminal Apprehension.

Plaintiffs emphasize that the Minnesota Department of Public Safety – Bureau of Criminal Apprehension Report names Xcel as a "Responsible Party/Property Owner" (Report at 1); however, such a designation is not conclusive evidence of Defendant's liability.  Indeed, the "responsible party" language appears as form language on the Report.  Plaintiffs also note that the Minnesota Pollution Control Agency ("MPCA") notified Defendant of its clean-up responsibility as a responsible party pursuant to Minn. Stat. § 115B.17.  (Second Am. Compl. ¶ 32.)  However, "no removal action taken by any person shall be construed as an admission of liability for a release or threatened release."

Minn. Stat. § 115B.17, subd. 1(3)(b).  Thus, neither Defendant's name on the Report nor the removal action it took are enough to constitute liability.

Because Plaintiffs have not sufficiently pled facts showing a violation of MERA, the Court properly dismisses this claim.

### B.   Claim for Declaratory Relief

The Court has broad discretion to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  The purpose of the Declaratory Judgment Act is to provide a remedy which will "minimize the danger of avoidable loss and the unnecessary accrual of damages."  *Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1206–07 (E.D. Mo. 1985) (quoting 10A  C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 2751 at 569 (1983)).

Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring and adjudging that there is or has been a "release" or "threatened release" of a hazardous substance, and that Defendant disposed of this substance on the Roseville property. Plaintiffs allege that Defendant "owned or operated a facility at the time of the disposal of hazardous substances on the Property regardless of whether they caused or contributed to the release or threatened release of the hazardous substance at issue in this lawsuit." (Second Am. Compl. ¶ 56.)  Plaintiffs further allege that Defendant "does not need to know to which site its wastes were taken in order to be held liable as one who arranged for the disposal of hazardous substances."  (*Id.* ¶ 59.)  Plaintiffs do not allege facts, however, claiming that Defendant owned or operated the Roseville property.  No facts in

the complaint support Plaintiffs' assertion that "Defendant[] [is] a responsible person that released a hazardous substance at the Property."  (*Id.* ¶ 62.)

In addition, the purposes of the Declaratory Judgment Act would not be served in this instance by issuance of declaratory relief by the Court.  Plaintiffs have already set forth substantive CERLA and MERLA claims, and issuance of a declaratory judgment as to particular elements of these statutes would not provide additional relief.  *See Mille Lacs Band of Chippewa Indians v. Minnesota*, 152 F.R.D. 580, 582 (D. Minn. 1993) ("A redundant declaratory judgment claim is not a proper declaratory judgment claim and should be dismissed.").  Furthermore, there is no danger that without a declarative judgment, avoidable loss would occur, or that unnecessary damages are presently accruing which must be avoided using a declaratory judgment.  Because a grant of declaratory judgment would not provide relief for Plaintiffs, the Court dismisses Plaintiffs' claim for declaratory judgment on their MERLA, CERLA, and MERA claims.

### C.    Equitable Indemnification

Plaintiffs urge that Defendant should indemnify them in an amount in excess of $75,000 for expenses incurred in remediating the existence of the hazardous substances. Plaintiffs, however, have not pleaded facts supporting a claim of equitable indemnification under Minnesota law.

The Minnesota Supreme Court has set forth the following situations in which a joint tortfeasor may be entitled to indemnification:

> (1)    Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

(2)　　Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

(3)　　Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

. . .

(5)　　Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.

*Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362, 366 (Minn. 1977) (quoting *Hendrickson v. Minnesota Power and Light Co.*, 104 N.W.2d 843, 848 (1960)).[6]  Plaintiffs in this case have not pleaded that any judgment, settlement, or liability has been decided for which they could be indemnified.  Also, two tortfeasors are not implicated here; Defendant has not been found responsible for any wrongdoing; and Plaintiffs have not identified a judgment for which they should be indemnified.  Moreover, Plaintiffs have not alleged facts that would place them in any of the categories enumerated above.  Plaintiffs do not allege:  that they have any vicarious or derivative liability for damage caused by Defendant; that they incurred liability at the direction of, in the interest of, or in reliance on Defendant; or that they incurred liability as a result of a breach of duty owed to them by Defendant.  There also exists no contract or agreement between Plaintiffs and

---

[6]　　*Tolbert* overruled a fourth category in which a joint tortfeasor could recover indemnity "where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged."  There, the Court ruled that where the negligence of more than one party is a direct cause of the injury, each party must pay its own share of the damages in proportion to its relative culpability.  *Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362 (Minn. 1977).

Defendant containing an explicit undertaking to reimburse Plaintiffs for any liability. Because Plaintiffs have not sufficiently pleaded a liability for which they should be indemnified or facts that would support indemnity, the Court dismisses Plaintiffs' claim for equitable indemnification.

### D.   Trespass

Plaintiffs claim Defendant trespassed by storing or disposing of hazardous substances on the Roseville property.  Trespass occurs when a person "enters another's land without consent."  *Copeland v. Hubbard Broad., Inc.*, 526 N.W.2d 402, 403 (Minn. Ct. App. 1995).  Two elements must be shown:  the plaintiff's rightful possession and the defendant's unlawful entry.  *Special Force Ministries v. WCCO TV*, 584 N.W.2d 789, 792-93 (Minn. Ct. App. 1998).  Trespass can occur when a permitted entrant exceeds the scope of consent.  *Copeland*, 526 N.W.2d at 404–05.  Whether consent has been given is a fact question for the jury.  *Id.* at 405.

Plaintiffs claim that Defendant unlawfully entered the Roseville property without Plaintiffs' consent, or that it exceeded the scope of any consent given by Plaintiffs, and then stored or disposed of hazardous substances on the property which interfered with Plaintiffs' rights.  (Second Am. Compl. ¶ 71.)  Plaintiffs do not allege, however, that Defendant entered onto the Roseville property after Plaintiffs took ownership of said property.  Plaintiffs allege that they entered into a purchase agreement on December 12, 2009, and closed the purchase on January 4, 2010.  (*Id.* ¶ 18.)  Plaintiffs took possession of the property shortly thereafter.  (*Id.*)  Plaintiffs indicate that Defendant visited the property "in late 2009 or early 2010" to remove the capacitors and take photos and soil

samples from the property.  (*Id.* ¶ 20.)  Plaintiffs do not allege with any factual specificity

when Defendant entered the property, or under what circumstances it entered.

Plaintiffs also appear to argue that the disposal of the hazardous substances

themselves was an act of trespass; however, as stated above, Plaintiffs have failed to

allege facts supporting the contention that Defendant disposed of, stored, or arranged for

the storage and disposal of the hazardous substances on the property.

Absent factual allegations supporting Plaintiffs' claim of unlawful entry or entry

outside Plaintiffs' granted consent, Plaintiffs' claim of trespass fails and is properly

dismissed by the Court.

### E.      Nuisance

Plaintiffs allege that Defendant has created a nuisance by "releasing or disposing

of a hazardous substance upon Plaintiffs' property, causing the release or disposal of a

hazardous substance upon Plaintiffs' property . . . and/or storing hazardous substances on

the property," and claim damages in excess of $75,000.  (Second Am. Compl. ¶ 76, 77.)

Nuisance, under Minnesota statute, is "[a]nything which is injurious to health, or

indecent or offensive to the senses, or an obstruction to the free use of property, so as to

interfere with the comfortable enjoyment of life or property."  Minn. Stat. § 561.01.  A

nuisance action may be brought by "any person whose property is injuriously affected or

whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance

may be enjoined or abated, as well as damages recovered."  *Id.*  Minn. Stat. § 561.01

defines nuisance in terms of the resultant harm rather than the conduct causing the harm;

however, there must still be wrongful conduct to establish a nuisance claim.  *Highview*

*North Apartments v. County of Ramsey*, 323 N.W.2d 65, 70–71 (Minn. 1982).  This wrongful conduct "varies, and may at times be characterized as intentional conduct, negligence, ultrahazardous activity, violation of a statute or some other tortious activity." *Id.* at 71.  For example, sewage deposited on a plaintiff's property would give rise to "self-evident" wrongful conduct.  *Id.*

In this case, however, Plaintiffs have not alleged any facts supporting the conclusion that Defendant itself released or disposed of the hazardous substance on the Roseville property, whether intentionally, negligently, or otherwise, or that it was responsible for Mr. Trihus's placement of the capacitors on the property.  Without factual allegations showing a causal link between Defendant's conduct and the resulting harm, a nuisance claim cannot be supported.  Therefore, the Court dismisses this claim.

### F.     Negligence

Plaintiffs allege that Defendant was negligent in breaching a duty of care by generating, storing, transporting, or disposing of hazardous materials on the Roseville property.  (Second Am. Compl. ¶ 81.)  For Plaintiffs to set forth a negligence claim, they must allege facts to show:  (1) the existence of a duty of care; (2) breach of that duty; (3) proximate causation; and (4) injury.  *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007).

At issue in this case is whether Defendant owed a duty to Plaintiffs, and if so, whether it breached that duty.  Duty can be established by statute, or by special relationship.  "In order to find that a special relationship exists, it must be assumed that the harm to be prevented by the defendant is one that '[the defendant] is in a position to

protect against and should be expected to protect against.'"  *Gilbertson v. Leininger*, 599

N.W.2d 127, 131 (Minn. 1999).  Traditionally, a legal duty based on special relationship

exists only in situations involving common carriers, innkeepers, possessors of land who

hold the land open to the public, and persons who have custody of another person in

which the person in custody is deprived of normal opportunities of self-protection.  *Id.*

(citing *Harper v. Herman*, 499 N.W.2d 472, 474 (Minn. 1993)).  No such relationship

exists in the present case.

A duty of care may also arise when a defendant is negligent per se by violating a

statute.  *Anderson v. State*, 693 N.W.2d 181, 189 (Minn. 2005).  Negligence per se

"substitutes a statutory standard of care for the ordinary prudent person standard of care,

such that a violation of a statute . . . is conclusive evidence of duty and breach."

*Gradjelick v. Hance*, 646 N.W.2d 225, 232 n.3 (Minn. 2002).  In order for a statutory

violation to satisfy both the duty and breach elements, Plaintiffs must be among those the

legislature intended to protect, and the harm must be of the type the legislature intended

to prevent by enacting the statute.  *Anderson*, 693 N.W.2d at 190.  Here, Plaintiffs allege

that Defendant had a duty to "safely maintain, control and dispose of the hazardous

substances from the moment that is [sic] took possession of the hazardous substances

until it properly disposed of the hazardous substances pursuant to 42 U.S.C. §6901

et seq."  (Second Am. Compl. ¶ 66.)  Plaintiffs argue that Defendant had a "duty imposed

by law to protect the public, including Plaintiffs from exposure to hazardous substances."

(*Id.*)  However, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.

§§ 6901–6987, which Plaintiffs cite to show Defendant's duty, was not intended to

provide a private cause of action for private property owners to recover cleanup costs. *Furrer v. Brown*, 62 F.3d 1092 (8th Cir. 1995). Rather, the RCRA was intended to be "an emergency type action to abate imminent hazards." *Id.* (quoting H.R. Rep. No. 198, 98th Cong., 2d Sess., pt. 1, at 119 (1984)). While "abatement of a hazardous waste spill can be ordered . . . by a variety of federal and state authorities . . . liability attaches, without regard to fault, to the then owner of the property." *Id.* at 1098–1099. Thus, Plaintiffs have not sufficiently pleaded that Defendant owed Plaintiffs a duty under the RCRA, or that any such duty was breached.

Plaintiffs also claim that Defendant owed them a duty of care with regard to any hazardous materials that Defendant "generated, stored, transported, or disposed of" which "included doing so as to not cause harm to anyone." (Second Am. Compl. ¶ 79.) Plaintiffs do not allege that Defendant owed a direct duty to Plaintiffs, but rather that Defendant is "strictly vicariously liable for Mr. Trihus's conduct." (*Id.* ¶ 80.)

An employer may be liable for negligent and intentional torts of an employee that are committed in the scope of his or her employment. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 756 (1998). However, Plaintiffs have not pleaded any facts supporting the claim that Mr. Trihus's transportation, storage, or disposal of the capacitors on the Roseville property occurred within the scope of any work-related duties. In fact, Plaintiffs say nothing about Defendant's involvement in the initial disposal of the capacitors; they merely allege that "Mr. Trihus transported [c]apacitors and other electrical equipment owned, possessed, stored, disposed of or otherwise under the dominion and control of Xcel." (Second Am. Compl. ¶ 16.)

The Court must decide whether enough facts exist to "raise a reasonable expectation that discovery will reveal evidence of the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Here, Plaintiffs allege no facts suggesting that Defendant intended for Mr. Trihus to transport and store the capacitors, that Defendant negligently allowed the transport of the capacitors to occur, or that Mr. Trihus had apparent authority to dispose of the capacitors on his property.[7] *Burlington Indus.*, 524 U.S. at 759–60.

The Court finds that Plaintiffs have failed to identify a duty that extends directly from Defendant to Plaintiffs as homeowners in this situation.  As such, Plaintiffs' negligence claim is dismissed.

### G.    Negligent Hiring, Training, Retention, and Supervision

In their eighth count, Plaintiffs allege that Defendant had a mandatory duty of care to Plaintiffs to properly train, hire, retain, and supervise its officials to prevent unreasonable risk of harm to others, and that Defendant did not exercise the proper duty of care with regard to Mr. Trihus's hiring, training, retention, and supervision.  (Second Am. Compl. ¶¶ 85–87.)

---

[7]    While the Court is unaware of Defendant's policies, if any, governing the transportation and disposal of capacitors, Plaintiffs have not alleged that Defendant breached a duty that arose from such a company policy, and Defendant's policies are not before the Court for purposes of the present motion.  However, Plaintiffs' inability to show that Defendant owed them a duty of any kind renders further discovery on Defendant's disposal policies irrelevant.

Minnesota does not recognize a cause of action against an employer for negligent training. *Johnson v. Peterson*, 734 N.W.2d 275, 277 (Minn. Ct. App. 2007).  As a result, the Court dismisses Plaintiffs' negligent training count for failure to state a claim.

Plaintiffs' claims of negligent hiring, retention, and supervision also fail because Plaintiffs have not alleged facts indicating that Defendant inflicted physical injury or created a foreseeable threat of physical injury.  With respect to negligent supervision, the Minnesota Supreme Court has adopted the Restatement (Second) of Agency § 213, which provides that an employer can be liable for harm resulting from the conduct of an agent if the employer is negligent or reckless in the supervision of the activity.  *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907 (Minn. 1983).  However, some form of physical injury is required for recovery on a claim of negligent supervision.  *Bruchas v. Preventive Care*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996).  The requirement that an employee inflict personal injury or create a foreseeable threat of physical injury extends to the cause of action for negligent hiring, *Johnson*, 734 N.W.2d at 277–78, as well as negligent retention, *Bruchas*, 553 N.W.2d at 442–43.  In the present case, Plaintiffs have neither alleged a personal injury, nor alleged any facts from which the Court could conclude that Defendant knew that Mr. Trihus would engage in injurious conduct.  Therefore, Plaintiffs' claims for negligent hiring, supervision, and retention must be dismissed.

Even if Plaintiffs were to allege facts showing a personal injury or foreseeable risk of personal injury, Plaintiffs' negligent hiring and retention claims would still fail because Plaintiffs have not set forth facts alleging that Mr. Trihus committed an intentional tort.  Minnesota law limits an employer's liability for negligent hiring and

retention to cases in which an employee has committed an intentional tort.  *Bruchas*, 553 N.W.2d at 442; *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn. Ct. App. 1993). Plaintiffs do not claim that Mr. Trihus committed any intentional tort for which Defendant could be liable.

Negligent hiring and negligent retention claims need not rest on actions committed within the scope of employment.  *Yunker*, 496 N.W.2d at 422.  However, claims involving negligent supervision must allege that physical injury caused by the employee happened within the scope of employment.  *Olson v. First Church of the Nazarene*, 661 N.W.2d 254, 264 (Minn. Ct. App. 2003).  Plaintiffs in this case have not alleged that Defendant negligently allowed Mr. Trihus to remove the capacitors in the scope of his employment; rather, they state simply that he "transported [c]apacitors and other electrical equipment owned, possessed, stored, disposed of or otherwise under the dominion and control of Xcel" to his property.  (Second Am. Compl. ¶ 16.)  Thus, Plaintiffs' claim for negligent supervision also fails for this reason.

## CONCLUSION

Despite two opportunities to amend their complaint, Plaintiffs have failed to plead sufficient facts to sustain a cause of action under any of their eight claims.  As a result, the Court dismisses Plaintiffs' complaint with prejudice.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1.      Northern States Power Company's Motion to Dismiss (Doc. No. [7]) is

**GRANTED**.

2.      Plaintiffs' Second Amended Complaint (Doc. No. [16]) is **DISMISSED**

**WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  November 9, 2011                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge